## Case No. 16,594.

### UNITED STATES v. ULRICI.

[3 Dill. 532.] [1]

Circuit Court, E. D. Missouri. 1875.

REPEAL OF PENAL STATUTES—CONSPIRACY TO DEFRAUD UNITED STATES—INDICTMENT—AVERMENT OF INTENT — REMOVAL OF DISTILLED SPIRITS — EFFACING STAMPS.

1. The sections of the Revised Statutes under which the indictments were drawn, continue in

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

force, notwithstanding a later act, prescribing a different punishment. The Revised Statutes contain a general provision modifying the common law doctrine in this respect, which is construed and applied.

[Cited in U. S. v. Van Vliet, 23 Fed. 35. Followed in U. S. v. Mathews, Id. 75. Quoted in U. S. v. Reisinger, 128 U. S. 402, 9 Sup. Ct. 101.]

[Cited in brief in Bush v. District of Columbia, 1 App. D. C. 3; McCann v. Mortgage, Bank. & Inv. Co. (N. D.) 54 N. W. 1029.]

2. Requisites of indictment against distiller for conspiracy to defraud the United States of the internal revenue tax, considered; and held not essential to state, in addition to an intent to defraud, the facts showing such intent.

[Cited in U. S. v. Simmons, 96 U. S. 364.]
[Cited in Bonneville v. State, 53 Wis. 686, 11 N. W. 427.]

3. Where the charge is of an attempt to defraud, the pleader should specify some acts which constitute the attempt.

[Cited in U. S. v. Walsh, Case No. 16,636.]

4. A count for the removal of distilled spirits from the distillery to a place other than the distillery warehouse, held sufficient.

5. Under the legislation of congress (Rev. St. § 3224), an indictment for failing to efface, etc., marks and brands at the time of emptying the cask or package, need not aver a criminal intent.

6. So as to a person having in his possession tax-paid stamps once used. In the cases last mentioned, congress has not made criminal intent an element of the offences.

7. Whether the punishment is limited to the person who actually empties the highwines, or extends as well to his employer, quære?

Two indictments were found against the defendant [Rudolph W. Ulrici], the nature of which appears in the following opinion given by the circuit justice, on demurrer, at the September term, 1875. The opinion was orally pronounced, and is reported from the shorthand notes taken at the time.

Mr. Dyer, U. S. Dist. Atty., Mr. Henderson, Mr. Eaton, and Mr. Bliss, for the United States.

John W. Noble, for defendant.

Before MILLER, Circuit Justice, and TREAT, District Judge.

MILLER, Circuit Justice. These are two indictments found against one Ulrici, and have been submitted to the court upon demurrers. I will now proceed to consider them, and to pronounce the decision of the court upon the questions which have been raised.

To facilitate the consideration of these questions, I will divide the objections into two classes: First, those urged against both indictments, and, second, those made to the several counts respectively.

1. In the first place, it is contended that the act of 1875 [18 Stat. 307], having prescribed a different punishment for the offences charged in these indictments, the sections of the Revised Statutes, under which these indictments have been drawn, are repealed, inasmuch as the later act contains no saving clause. In answer to this, I would observe

that the 13th section of the Revised Statutes contains a general provision changing, as I conceive, the rule of the common law, that a statute modifying the punishment of a crime prescribed by a prior law operates as a repeal of that law. There is no doubt that that general proposition is sound. Any statute that varies the definition or the punishment of an offence abrogates the former statute; and no offences committed under it can, by a well-known principle of the law, be punished, unless the later act contains a saving clause. But, as I remarked, the Revised Statutes changed this rule of the common law. They were intended to change it, and it is only the extent of the change which is here questioned. Section 13 provides that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statue shall be treated as still remaining in force, for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

Now the counsel for the defendant argues that neither the word "penalty," "forfeiture," nor "liability," is equivalent to the word "punishment," and, therefore, that the section under which these indictments are drawn is repealed, unless the penal sanction is comprehended by the term "penalty," and this, he insists, means only that which can be enforced by a civil action; or, by the term "forfeiture," which relates merely to property; or, by the term "liability," which, he says, means merely subject to a civil proceeding. But, without attempting to go into a precise technical definition of each of these words, it is my opinion that they were used by congress to include all forms of punishment for crime; and, as strong evidence of this view, I found, during the progress of the argument, and called the attention of the counsel to a section, which prescribed fine and imprisonment for two years, wherein congress used the words: "Shall be liable to a penalty of not less than one thousand dollars, * * * and to imprisonment not more than two years." Moreover, any man using common language might say, and very properly, that congress had subjected a party to a liability, and, if asked what liability, might reply, a liability to be imprisoned. This is a very general use of language, and surely it would not be understood as denoting a civil proceeding. I think, therefore, that this word "liability" is intended to cover every form of punishment to which a man subjects himself, by violating the common laws of the country. Besides, as my Brother Treat reminds me, the word "prosecution" is used in this section, and that usually denotes a criminal proceeding.

2. I will now proceed to consider the first indictment, which contains three counts. The first count is objected to on the ground as it stands, that it contains merely a naked presentation of an offence which is denounced and

made punishable as a felony without any averment of those acts which are necessary to show what the felony really was. Now, let us inquire whether it is liable to this objection. It sets out that the defendant did engage in and carry on the business of a distiller, at his distillery situated in the city of St. Louis, with intent, then and there, to defraud the United States of the tax due upon each and every gallon of one thousand proof gallons of spirits thereafter to be distilled by him. Now, what he was doing is set out with sufficient particularity. It is alleged that he was carrying on the business of distiller at a particular place and at a particular time. and, while so engaged, conceived the intent, then and there, to defraud the United States. It is contended that there should be some statement of the evidence of this intent—that some one or more of the facts which manifest this intent should be set out in the indictment; but I suggested to counsel at the time, that, if he could show where it was necessary to describe more than what the party intended to do, in a case where intent was the essence of the crime, then this might not be considered a sufficient charge, but I apprehend that no such instance can be produced. Of course, you must show that what the party intended to do was criminal, because the offence is something which the law itself says he should not do. And that seems to have been done here. It is charged that the accused intended to defraud the United States of taxes upon the whisky he himself produced; that that tax was an internal revenue tax of seventy cents imposed upon every gallon distilled by him. But, it is said that you must show how he was going to do it. Now, an intent is often very hard to prove, but when you show that it is essential to a civil or criminal proceeding, you can demonstrate it in a thousand ways. All human actions are the external evidence of intent. The conduct of a man, in its thousand various forms, goes to discover his inner thoughts. And, to say that the indictment should allege these with particularity, would be very difficult for the pleader. Are we to set all the facts out? If not, where is the limit to be fixed? The objections, therefore, to this count are overruled, and it is held to be good.

3. Little was said specially upon the third count of this indictment, and yet, upon examination, we consider that there is a want of particularity in that. It is charged that, Ulrici being engaged in the business of distilling at this place, did, while so engaged, attempt to defraud the United States of the taxes imposed by law. Here the objection is good, for this indictment says nothing about intent. I think the defendant in this cause is entitled to have it shown what he did, or how he attempted to defraud. When you say that he attempted to defraud the government, I think it is your duty to specify some acts which constitute the attempt. We therefore hold the third count to be bad.

4. I come now to consider the fourth count. It is very different from the others. As we construe it, it is a count for the removal of distilled spirits from the distillery to a place other than the distillery warehouse. The gentleman who defended this count did not so understand it. He treated it as an indictment of the defendant for having in his possession the mash, still and other apparatus, with intent to defraud. This is the offence which, it has been said, is charged in this count. But it does not stop here. It goes on to aver that the said Ulrici, then and there carrying on the business of a distiller, did remove a large quantity of distilled spirits from the place where they were manufactured, to a place other than the distillery warehouse. This we conceive to be a good indictment for the removal, but not for having the distillery apparatus in possession with intention to defraud the government.

It was strenuously urged that the charge for the removal is well stated, as also having stamps, &c., in possession with fraudulent intent, and that, therefore, two distinct offences are alleged in the same count, and, consequently, it is bad. We concur in the opinion that the allegation of the removal is sufficient, and constitutes a complete crime; but we, at the same time, consider that the first averment may be properly treated, as inducement, as descriptive of the character of the person charged. It may be that there is a different punishment prescribed for a distiller committing this offence from that provided for others; if so, it was proper to describe him, in order that he might be subjected to that particular punishment. There is certainly a distinct punishment prescribed for a store-keeper committing this crime, and, if this were an indictment against Ulrici as a store-keeper, it should certainly recite his employment as such. The count, therefore, is adjudged good for the offence of wrongfully removing distilled spirits. This disposes of this indictment.

5. The other indictment presents far more serious questions, which have caused us much more difficulty in deciding. The first count in this indictment (leaving out the formal parts, such as the venue, the date, etc.), charges that the defendant did empty and draw off, and cause to be emptied and drawn off, so many thousand gallons of distilled spirits, contained in so many barrels, which barrels bore a tax-paid stamp to denote that the tax due the United States had been paid, "and did feloniously then and there fail, at the time of emptying and causing to be emptied and drawn off, the said contents of said barrels, to efface and obliterate from each of said barrels the said stamp." &c.

The objection to this count urged by the counsel for the defence, and which, we think, had a good deal of force, is, that it is nowhere charged that the offence was committed intentionally or fraudulently; that is to say, that the failure to erase the stamps, which is the essence of the crime (for anybody has a

right to empty a barrel of highwines after the tax is paid), is not charged to have been done intentionally or fraudulently, and that, on the contrary. it might have been done by any honest purchaser of the whisky procured from the distillery, and this either carelessly, or absolutely without knowing the obligation imposed upon him by law. It certainly was truly said, that, unless there was some criminal intent, or some fraudulent purpose in the failure to erase these stamps, it was a great hardship that a man should be punished as a felon and disgraced in public estimation by imprisonment, and all for doing that, with no intent whatever to cheat or defraud or do harm to any one. The act might have been done in ignorance; it might have been done in negligence.

This section, No. 3324, is one which, in the Revised Statutes, and, I think, in some revision of the internal revenue laws prior to these, was intended to condense into one paragraph a description of offences, and a denunciation of penalties which had before been scattered in various enactments. and distributed in various parts of the revenue law. It speaks of the offence of emptying casks of distilled spirits, with stamps upon them, in two different places. and leaving out all other offences contained in the section. I will collocate what is said on this particular subject: "Every person who empties or draws off, or causes to be emptied or drawn off, any distilled spirits from a cask or package, bearing any mark. brand or stamp required by law, shall, at the time of emptying such cask or package, efface and obliterate said mark, stamp or brand." That is the obligation of everybody. Then comes one provision in the event that is not done. "Every such cask or package from which said mark, brand or stamp is not effaced and obliterated, as herein required, shall be forfeited to the United States, and may be seized by any officer of internal revenue wherever found." That is the penalty denounced upon the cask itself. Then there follow several other offences; and finally we come to the penalties applicable in this case: "Every person who fails to efface and obliterate said marks, stamp or brand, at the time of emptying such cask or package, * * * shall be deemed guilty of a felony, and shall be fined not less than $500, nor more than $10,000, and imprisoned not less than one year, nor more than five." Now, it is obvious. from what I have read, that the statute itself nowhere requires in express terms that the party who failed to efface or obliterate these stamps should have done it intentionally or fraudulently. The punishment is denounced against the simple failure, and such failure is declared to be a felony, and the party is subjected to the punishment appropriate to a felony.

It is very well understood, both by the courts. an by the profession, as well as every one interested in the matter, that the collection of the internal revenue tax in this country has required a system of legislation for its enforcement harsh beyond everything known to our history. And it is equally well understood that, harsh as these measures are, they have been far from successful. Notwithstanding the heavy penalties denounced against crimes which go to defraud the government of its revenue from internal taxes, and notwithstanding the minuteness and particularity in the description of these crimes, and notwithstanding all the aids which congress has given by legislation to the enforcement of the revenue laws, they have been very imperfectly executed, and that the government is cheated out of perhaps one-half of its revenue, especially that from the tax on whisky and tobacco. It is not contended that the legislature has not power to make this omission or failure a felony. It is not denied that it was within their province to adopt measures as severe as this, but it is argued that, in all cases, where an act is made a felony, that a felonious intent is essential to the commission of the crime. At common law, that may be true. but congress and the state legislatures, in defining and punishing, crimes, are above the common law. They have a right to change it, and the progress of society has developed the necessity of doing it very often; so that, in fact, there is hardly an offence existing to-day in this country which is punished in the state courts as a common law crime. And none whatsoever exists now or ever did exist, punishable as such in the United States courts.

The question is, then. narrowed down to this: Did congress intend, in this provision, declaring and punishing the failure to efface these stamps, at such time, as a felony, that a criminal intent should be necessary? We see nothing in the language of the statute requiring such an intent. On the other hand, we do see very much in the whole system of legislation on internal revenue showing that congress did not make intent a necessary ingredient in the crime. In their first enactments on this subject, they ignored the intent, and, very frequently in the course of their legislation concerning it, they denounced acts as crimes where the intention to do wrong constitutes no part of the offence. If such legislation be wise, or permissible at all, it is precisely in this class under consideration, where one would suppose that congress intended to create the offence. without making the scienter essential; for this failure itself exposes the government to fraud. just as well, and just as efficiently, whether it be intentional or unintentional. An empty cask, with this live evidence upon it. that the tax upon the liquor has been paid is perhaps the most fertile opportunity to cheat the government out of its revenue. Indeed. this stamp regulation is as complete to protect the government as any that has ever been devised by human ingenuity, for an empty cask, with a stamp upon it, bears the evidence that the whisky afterwards put into it has duly paid

the tax to the government. In various ways congress has shown a lively sense of the necessity of securing the revenue against this mode of cheating, by the use of barrels which bear the evidence that any liquor with which they may be filled has paid the tax. Those stamps had been already used, and ought to have been destroyed. Congress, therefore, saw fit to subject to very heavy penalties all persons who, either through carelessness or intentional conduct, thus exposed the government to be defrauded.

But this is not all. The decision does not rest alone upon this reasoning. The section under consideration contains a description of other offences, in which the intent is made indispensable to the completion of the crime, and there is no reasoning more often referred to, or more forcible, than that, when in the same section, an element is required in one case, and is left out in another, the omission was intentional; the legislature intended it. Now, right in the middle of this section, and in this connection, congress describes an offence where the intention is made a necessary ingredient; the language is this: "And every railroad company, or other transportation company, or person, who receives or transports, or has in possession with intent to transport, or with intent to cause or procure to be transported, any such empty cask or package, or any part thereof, having thereon any brand, mark or stamp, required by law to be placed on any cask or package containing distilled spirits, shall forfeit," etc. Now, why should congress say that, as to you, who failed to efface these stamps, no intention is required; but, as to the man who has possession of these casks, such possession must be accompanied with a criminal intent. He must intend to transport them. It seems to me so clear that congress intended this distinction, that I hardly think it necessary to argue it.

So we come now to the punishment. I have given the descriptions of the offences. In one case, intent is necessary, and in the other it is not. This is the concluding language of the statute: "Every person who fails to efface and obliterate said mark, stamp or brand, at the time of emptying such cask or package, or who receives any such cask or package, or any part thereof, with the intent aforesaid, * * * shall be deemed guilty of a felony." We cannot conclude, however harsh it may seem, that congress intended that a criminal intent should be averred in a charge for failure to destroy the stamps.

Nearly the same question is raised, and the same argument applies, with equal force, as to the second count, which charges the defendant with having in his possession tax-paid stamps, once used. But I shall not go over this whole argument again. It will be perceived, on reading the statute, that no intent is necessary. "Every person who has in his possession any such stamp, so removed as aforesaid, or has in his possession any cancelled stamp, or any stamp which has been

used, or which purports to have been used, upon any cask or package of distilled spirits, shall be deemed guilty of a felony." No intent is necessary here. It is argued that any man might have in his possession these stamps, however innocent, and that seems to me the strongest argument made. But, on looking carefully at the internal revenue laws, it appears very obvious, in view of the manner in which these stamps are affixed, that no man can have possession of them without knowing their character. They are not new stamps, they are stamps that have been once used, and the officer who places them upon the casks puts marks and names and numbers upon them, which are conclusive evidence that they have been used. Congress obviously had that view of the subject, and we do not think you can import the intent into the statute as framed. Consequently it is not necessary to allege it in the indictment. This proposition extends to all the counts in this indictment, and the demurrer is overruled.

Before I close, I will call the attention of the counsel to [U. S. v. Staats] 8 How. [49 U. S.] 41. This whole question of the allegation of intent is discussed, especially when the statute denounces the intent, and makes it a part of the offence.

Judge Krum: If the court please, as this is the first time this statute has been construed in this district, I would inquire whether your honors intended that the punishment as for a felony is to be limited to the person who actually empties the highwines, without destroying the stamps, or extends to those who employ him?

MILLER, Circuit Justice. We have not felt called upon to decide that question.

Judgment accordingly.

[See Cases Nos. 14,484–14,487, 15,670.]