## TLA–KOO–YEL–LEE *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

No. 516. Submitted March 1, 1897. — Decided May 24, 1897.

Tak-Ke and the plaintiff were indicted for murder. On the separate trial of the plaintiff in error, Tak-Ke's wife was a witness against him. On cross-examination the following questions were put to her: Who are you

living with now ?  Is it not a fact that since your husband was arrested
and convicted you have been living with this witness Ke-Tinch ?  Is it
not a fact that shortly after this affair took place you and the witness
Ke-Tinch agrèed to live together if your husband was convicted and you
yourself got clear ?  Each of these was objected to as immaterial and
incompetent and the objection was sustained.  *Held*, that the questions
should have been allowed.

The same objections made, sustained below, and that court overruled here,
as to drinking of the defendant, and as to what took place at the sailing
of the sloop.

THE case is stated in the opinion.

*Mr. F. D. Kelsey* for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This case comes here on writ of error to the District Court
of the United States for the District of Alaska.  The plain-
tiff in error is an Indian, and was indicted with another
Indian, named Tak-Ke, and, upon a separate trial, was con-
victed of the crime of murder in killing one August Jansen
on or about the 5th day of January, 1894, at or near Shekan,
within the Territory of Alaska and within the jurisdiction of
the District Court thereof.  He was thereupon sentenced to
be hanged. ·

Upon the trial in the District Court it appeared that the
authorities at Fort Wrangel, some 70 miles from Shekan,
were informed by some Indians at that place in May, 1894,
of the alleged murder of Jansen in the preceding January at
or near Shekan.  In July of that year the United States com-
missioner, a deputy marshal and some others started from
Fort Wrangel in a steam launch, chartered for the purpose,
and went to Shekan to find the body, if possible, and to take
such other proceedings as were proper in the premises.  An
Indian woman, Tlak-Sha, voluntarily accompanied them for
the purpose of showing where the body was to be found.  A
short distance from Shekan the party landed on the beach,

and under her direction search was made, and the body of
Jansen was discovered on the beach covered over with rock
and brush.   The body was sufficiently preserved to be identi-
fied, and it was recognized by some of the party.   After the
finding and recognition, the defendant, with the other above-
named Indian (Tak-Ke), was indicted for murder, and, upon
the defendant's separate trial, the Indian woman was sworn
as a witness.   She testified that in January, 1894, the deceased
was killed by the defendant and Tak-Ke, who was her hus-
band ; that they were in a small sloop near Shekan at the
time of the murder, and there were present the deceased, three
male Indians, herself and her child.   The third Indian was
named Ke-Tinch, and he was also sworn on the trial, and
while differing in some of the details from the story of the
woman, he corroborated her in the statement that the killing
was done by the defendant and by the woman's husband, the
defendant shooting the deceased and the woman's husband
striking him on the head with an axe.

The two Indians above named are the only witnesses to the
killing.   The female witness accompanied the searching party
from Fort Wrangel, and with her assistance the body was
found.   As one of the two witnesses on the trial she testified
against the defendant and her own husband, who was indicted
for the crime, though not then on trial.   It is apparent how
important it was to show to the jury, if possible, the bias, if
any, of the witness against the defendant, or to show that her
credibility was not to be depended upon by the jury.

In the course of her cross-examination upon the trial the
following questions were put to her :

" Q.   Before this affair took place were you Tak-Ke's wife ?
A.  Yes, sir.

" Q.  Whose wife are you now ?   A.  I am not married now.

" Q.  Who are you living with now ? "

Counsel for the prosecution objected to the above question
as immaterial and incompetent.   Objection sustained by the
court, to which ruling counsel for the defendant then and
there duly excepted.

" Q.  Is it not a fact that since your husband was arrested

and convicted you have been living with this witness Ke-Tinch?"

Counsel for the prosecution objected to the above question as incompetent. The objection was sustained by the court and an exception taken.

"Q. Is it not a fact that shortly after this affair took place that you and the witness Ke-Tinch agreed to live together if your husband was convicted and you yourselves got clear?"

Same objection was taken, which was sustained by the court, and an exception taken.

"Q. I will ask you if it is not a fact that this defendant got so drunk (upon this occasion) that he was laid in the canoe and covered over, and did not recover until after the body had been concealed? A. No, sir; he didn't get drunk; nobody drank.

"Q. I will ask you if it is not a fact that when he awoke and saw the sloop sailing away and asked where the sloop was going, that Tak-Ke told him the white man was sailing away?"

Objection taken to the question as incompetent, irrelevant and immaterial. Objection sustained by the court and an exception taken.

We think answers to all these questions should have been permitted. The questions were directed to the purpose of showing material facts bearing upon the character and credibility of the witness, and the counsel for the defendant ought to have been permitted to proceed with his examination and obtain answers from the witness to that end. The two Indian witnesses (of whom the woman was one) did not agree in regard to the details of the alleged murder, and there is enough in the record to show that they were both of a low order of intelligence, and that they testified without any very solemn appreciation of their responsibilities as witnesses upon the trial of one individual for the murder of another. The whole occurrence at the time of the alleged murder is left in a good deal of confusion, and the credence to be given to the testimony of the woman was of the highest importance.

The learned solicitor general in his brief in this case, with most commendable candor and fairness, has said:

"But we feel constrained to say from an analysis of the evidence certified in this record, that while it was left to the jury to ascertain the facts established by the evidence, the mind is oppressed with a painful doubt as to the soundness of the verdict returned by the jury."

And in speaking of the refusal of the court to permit answers to be given to the questions asked, as above recited, counsel for the Government also says in his brief:

"No reason is given for the exclusion of these questions beyond that reiterated in the objection, that they were 'incompetent, irrelevant and immaterial.'"

He frankly says that in his opinion this evidence was admissible, and we have no doubt that it was.

The judgment must, therefore, be

*Reversed, and the cause remanded to the District Court of Alaska with instructions to set aside the verdict and grant a new trial.*