**LOVELY v. UNITED STATES.**
No. 5843.

United States Court of Appeals
Fourth Circuit.
May 24, 1949.

James F. Dreher and David W. Robinson, Columbia, S. C., for appellant.

Louis M. Shimel, Assistant U. S. Attorney, Charleston, S. C. (Ben Scott Whaley, U. S. Attorney, Charleston, S. C., and Henry H. Edens, Assistant U. S. Attorney, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

William Theodore Lovely (hereinafter called accused) was convicted, at his first trial, of rape committed upon a federal reservation. We set aside the judgment of conviction 4 Cir., 169 F.2d 386, and ordered a new trial. At this second trial accused was again convicted and, upon the jury's verdict of guilty without capital punishment, he was sentenced to life imprisonment. In this appeal by accused, his counsel have set out eight alleged errors in the trial below as grounds for reversal. We proceed to discuss these contentions seriatim.

First, it is alleged that the District Court erred in admitting, on the cross-examination of accused, evidence of his illicit sexual relations with a woman other than the prosecutrix. Accused had not put his character in evidence. The holdings of the courts in this field are many and varied; the same is true of statements by text-writers. See, the previous opinion of Circuit Judge Parker in this case, Lovely v. United States, 4 Cir, 169 F.2d 386; Michelson v. United States, 335 U.S. 469, 69 S. Ct. 213; Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469; Bird v. United States, 180 U.S. 356, 21 S.Ct. 403, 45 L.Ed. 570; Hall v. United States, 150 U.S. 76, 14 S.Ct. 22, 37 L.Ed. 1003; Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077. Compare, Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Tla-koo-yel-lee v. United States, 167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166; Viereck v. United States, 78 U.S.App. D.C. 279, 139 F.2d 847, 851, certiorari denied 321 U.S. 794, 64 S.Ct. 787, 88 L.Ed. 1083; Simon v. United States, 4 Cir., 123 F.2d 80, 85, certiorari denied 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555; United States v. Waldon, 7 Cir., 114 F.2d 982, 984, certiorari denied 312 U.S. 681, 61 S.Ct. 549, 85 L.Ed. 1119; Christopoulo v. United States, 4 Cir., 230 F. 788; Fields v. United States, 4 Cir., 221 F. 242, 245, certiorari denied 238 U.S. 640, 35 S.Ct. 941, 59 L.Ed. 1501. See, also, Wigmore on Evidence, 3d Ed., §§ 891, 981, 982, 2276, 2277; Underhill, Criminal Evidence, 4th Ed., §§ 139, 140.

We are inclined to think that this evidence was (at the time it was introduced) inadmissible. But we do not think it necessary to pass definitely on this question; for we do not regard the error (if any) as prejudicial to accused or as warrant for a reversal. Accused introduced, as a witness on his behalf, his partner in this illicit relationship and she testified in detail concerning it. When she testified for accused, it was proper to delve into this relationship, which had relevancy in determining her bias or prejudice. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Tla-koo-yel-lee v. United States, 167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166; United States v. Edmonds, D.C., 63 F.Supp. 968. Her name had been furnished, too, as a witness for accused, when (at the opening of the trial) he made his motion (sustained by the District Court) that the witnesses be segregated. Moreover, no objection to this phase of accused's cross-examination was made by counsel for accused, though accused himself stated, when questioned about this relationship, that his answer would be incriminating and that he did not wish to answer. At the first trial, accused had volunteered information as to his intimate relationship with this witness in explaining that the blood on his clothing was not that of the prosecutrix.

█ Accused next objects to a question put to this guilty partner of his on cross-examination. She was asked if she had not told the prosecutrix "that Lieutenant Lovely had hurt other people." Her answer was a prompt denial that she had made any such statement. The question had relevancy in connection with other parts of her testimony as testing the credibility of the witness. No objection to this testimony was made by accused's counsel and we cannot go along with the suggestion of accused's counsel that here was "laid against the appellant an accusation of similar rapes upon other girls." So again we find here no reversible error.

█ We come next to the contention that the District Court erred in permitting accused to be harassed and demeaned on his cross-examination. See, Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Mannix v. United States, 4 Cir., 140 F.2d 250; Sutherland v. United States, 4 Cir., 92 F.2d 305. The latitude to be allowed on the cross-examination of an accused, when he voluntarily takes the stand on his own behalf, especially in a rape case, must largely be left to the trial judge; though there are, of course, certain limits beyond which the cross-examiner must not go. See the Alford and Mannix cases just cited above. And here the nature of much of the unsavory testimony given by the accused on direct examination laid him open, with all propriety, to a cross-examination that could be vigorous and detailed. Again, no objection to this cross-examination was made by accused's counsel. Had such a suggestion been made to the District Judge, he well might have cautioned the perhaps over-zealous counsel for the United States but no such suggestion was made. So, as we view this cross-examination, limned against the whole background of the case, we find therein no basis for reversing the judgment below.

We find no merit in accused's next contention:

"Although the Court held as a matter of law that the Appellant had the right to show previous sexual experiences of the prosecutrix and her general unchaste character for the purpose of attacking her credibility and to show the probability of her consent to the intercourse with Appellant, it so limited Appellant's proof in these connections as to practically deprive him of this ground of defense."

█ The District Judge allowed the witnesses Oakland Cox, E. L. Cox, Mrs. Poston and Miss Avant to go just as far as relevancy would permit. Their testimony ranged far and wide. Accused offered no positive evidence of any prior sexual misconduct on the part of the prosecutrix; he attempted to supply this want of proof by means which the Trial Judge classed as "a smear campaign by insinuations." Accused has here no proper ground for complaint, for any limits placed on the evidence of these witnesses by the District Judge were, under the circumstances, more than amply warranted and reasonable.

More serious is the objection that, in his charge to the jury, the District Judge erred in marshalling the evidence to the prejudice of accused. Thus we are told by counsel for the accused:

"In the marshalling of the evidence in this case the Court reviewed the Government's evidence in much detail, but touched only the high spots of the testimony offered on behalf of the defendant. Several important features of the appellant's case were not mentioned by the Court in its reference to the testimony adduced."

Accused complains especially that the Court "did not comment upon the fact that the prosecutrix made no report to any law enforcement officer until two days after the alleged rape." It is true that no mention was made of this fact in the Court's general reference to the evidence adduced. But no less than four of the specific instructions, given by the Court at the request of accused, dealt with the significance of the prosecutrix' failure to immediately report the alleged outrage. The point was fully and fairly covered.

Much the same may be said of the accused's objection that "the Court made no direct reference in discussing the facts to the defendant's very strong evidence to the effect that the prosecutrix had actually agreed to drop the charges upon the payment to her of $500.00 and was, in fact, the one who suggested the settlement."

The jury's attention was certainly called to this evidence by the Court's instruction that any such offer or agreement to settle the case would be no bar to the prosecution but might be considered in connection with the disputed issue of consent before the consummation of the act. And, again, the accused's specific instruction No. 8, covering this point, was given, so far as the record discloses, precisely as requested.

In his general comments on the evidence the Court below reviewed primarily the two divergent theories of the facts asserted by the prosecutrix and the accused. He was not required, and did not attempt, to cite each and every bit of evidence tending to support each of these theories. Moreover, he concluded this portion of his charge by telling the jury:

"You will note that I have expressed no opinion as to the truth or falsity of any of the testimony I have reviewed. That is a matter for the jury to decide as you have been previously told."

■ The general law on this subject was aptly stated by Chief Justice Hughes in the well known case of Quercia v. United States, 289 U.S. 466, 469-470, 53 S.Ct. 698, 77 L.Ed. 1321:

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. Herron v. Southern Pacific Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. * * *

"This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.'"

See, also, Wheatley v. United States, 4 Cir., 159 F.2d 599; Perkins v. United States, 4 Cir., 228 F. 408, 420.

■ Accused has no valid ground for complaint here against the District Judge's summation of, and comments on, the evidence. Both sides of the picture were covered and the District Judge made "it clear to the jury that all matters of fact are submitted to their determination." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321.

■ Nor do we find any error in the refusal of the District Judge to give accused's requested instructions No. 9 and No. 14. These read as follows:

"9. Wrongful as it was for defendant to attempt to have sexual relations with plaintiff, if at any time during the encounter she willingly or even passively surrendered to his embraces, there could be no assault, however strong may have been her resistance to his initial advances.

"14. A man will be justified in assuming the existence of consent if the conduct of the prosecutrix toward him at the time of the occurrence is of such nature as to create in his mind a reasonable belief that she has consented by yielding her will to the commission of the act."

Even if it be conceded, as is asserted by accused's counsel, that "these requests embodied sound propositions of law," they are somewhat ineptly worded and the substance

of the requested instructions was very fully and altogether fairly covered by other instructions given by the District Judge.

■ Nor is there any validity in accused's objection that he was inadequately represented by counsel at the second trial. He was asked at the trial: "Q. You have two very good lawyers. Don't you think you've got good lawyers?" And he replied: "A. I have now, yes, sir." Nor are we impressed by the affidavit of Mrs. Edna Hayes, made over a month after the conviction of accused.

This brings us to the last, and probably the most difficult, question in this case. The District Judge held that upon the jury's verdict of guilty, without capital punishment, it was mandatory for him to sentence accused to life imprisonment.

At the time of the commission of the offense for which accused has been convicted, and also at the time of the first trial, the following statutes were in full force and effect: 18 U.S.C.A. § 457 [now § 2031]: "Whoever shall commit the crime of rape shall suffer death"; and 18 U.S.C.A. § 567 [now § 1111]:

"In all cases where the accused is found guilty of the crime of murder in the first degree, or rape, the jury may qualify their verdict by adding thereto 'without capital punishment'; and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life."

Congress (Public Law 772 of the 80th Congress, 62 Stat. 683) revised and codified the federal criminal law into a new Title 18, effective September 1, 1948. In the new codification, 18 U.S.C.A. § 2031 reads:

"Whoever, within the special maritime and territorial jurisdiction of the United States, commits rape shall suffer death, or imprisonment for any term of years or for life."

And Section 21 of the new law (Public Law 772, 80th Congress, 62 Stat. 862) provides:

"The sections or parts thereof of the Revised Statutes or Statutes at Large enumerated in the following schedule are hereby repealed. Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." Both sections 457 and 567 of old Title 18 U.S.C.A. (quoted above) were listed among the statutes repealed by the new Code.

■ The second trial of accused (with which we are now concerned) took place after the effective date of the new Code. Thus was presented the interesting problem of whether the District Court was bound under the Saving Clause of the new Code (Section 21, Public Law 772, 80th, Congress, 62 Stat. 862) to sentence accused under the old statute (requiring a sentence of life imprisonment) or whether, under the new Statute (18 U.S.C.A. § 2031) he had a discretion to sentence accused to "death or imprisonment for any term of years or for life." The District Judge felt bound to impose a sentence of life imprisonment (under the old statute) and we think his decision here was correct.

Accused's counsel lay great stress on the different wording of the *general* saving statute (formerly 1 U.S.C.A. § 29, now 1 U.S.C.A. § 109) which provides that the repeal of any statute shall not have the effect to release or extinguish any "penalty, forfeiture, or liability" incurred under such statute, while the saving clause contained in the new Title 18 U.S.C.A., omitting the words "penalty and forfeiture," provides: "Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." We think, so far as the instant case is concerned, that here is a technical distinction without a real difference.

No cases have been cited to us, nor have we been able to find any, interpreting the *new* Title 18 saving clause. There are, however, cases dealing with the general saving statute and these seem in point here, particularly in what is said in those cases as to the meaning of the word "liability." Thus in United States v. Reisinger, 128 U.S. 398, 403, 9 S.Ct. 99, 101, 32 L.Ed. 480, Mr. Justice Lamar quoted with approval the words of Mr. Justice Miller in United States v. Ulrici, 28 Fed.Cas. page 329, No. 16, 594, 3 Dill. 532:

"Moreover, any man using common language might say, and very properly, that congress had subjected a party to a liability, and, if asked what liability, might reply, a liability to be imprisoned. This is a very general use of language, and surely it would not be understood as denoting a civil proceeding. I think, therefore, that this word 'liability' is intended to cover every form of punishment to which a man subjects himself by violating the common laws of the country."

In Maceo v. United States, 5 Cir., 46 F. 2d 788, 789, Circuit Judge Foster said:

"However, the amendatory act does not contain a provision applying it to previously committed offenses, and therefore, under the provisions of Rev.St. § 13 (1 U.S.C.A. § 29), it has no application to pending cases. The proviso in the first section of the Act of March 2, 1929 [45 Stat. 1446], relied upon by appellant, is merely directory, and the imposition of sentence under that act was within the sound discretion of the court."

See, also, Hurwitz v. United States, 60 App.D.C. 298, 53 F.2d 552, in which Associate Justice Robb (speaking for the Court of Appeals of the District of Columbia) cited the Maceo case with approval. Cf. Husty v. United States, 282 U.S. 694, 702-703, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407; National Labor Relations Board v. National Garment Co., 8 Cir., 166 F.2d 233, certiorari denied 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1768; National Labor Relations Board v. Gate City Cotton Mills, 5 Cir., 167 F.2d 647.

In 35, Words and Phrases, Perm.Ed., "Punishment", we find:

"The words 'penalty,' 'liability,' and 'forfeiture' are frequently treated as synonymous with the word 'punishment,' in connection with crimes of the highest grade. Holliman v. Cole, 168 Okl. 473, 34 P.2d 597, 599; Jones v. State, 10 Okl.Cr. 216, 136 P. 182, 183 [137 P. 121]. * * *

" 'Punishment' is synonymous with 'penalty.' And 'liability' and 'forfeiture' are synonymous with 'punishment,' in connection with crimes of the highest grade."

 There is nothing in United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, which militates against the view we have expressed. That case dealt primarily with the effect of the ratification of the Twenty-first Amendment to the Federal Constitution upon the Eighteenth Amendment and statutes finding their support in the latter Amendment. And Chief Justice Hughes, in that case, 291 U. S. at page 223, 54 S.Ct. at page 435, pointed out: "In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions *unless competent authority has kept the statute alive for that purpose."* (Italics ours.) In our case, we think "competent authority" is found in the saving clause of Section 21 of Act June 25, 1948, c. 645, 62 Stat. 683, 862 enacting the new Title 18.

Accused is not helped by the opinion of District Judge Hall in United States v. Auerbach, D.C., 68 F.Supp. 776, nor by any of the broad language of District Judge Sweeney in United States v. Hark, D.C., 49 F.Supp. 95. We note, moreover, that the latter case was reversed on appeal by the Supreme Court. 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290, rehearing denied 321 U. S. 802, 64 S.Ct. 517, 88 L.Ed. 1089.

Our attention is called to statements and cases setting out such broad principles as the court should sentence in accord with the law in existence at the time of sentence, or where a later statute mitigates punishment for an offense, the accused may elect whether he is to be sentenced under the old or the new statute. See, People v. Roper, 259 N.Y. 635, 182 N.E. 213; State v. Cooler, 30 S.C. 105, 8 S.E. 692, 3 L.R.A. 181; Hair v. State, 16 Neb. 601, 21 N.W. 464; 15 Am.Jur. 167; 102 A.L.R. 1041. Cf. Great Northern Railway Co. v. United States, 208 U.S. 452, 28 S.Ct. 313, 52 L.Ed. 567. But, see also, Watson v. State, 4 Ala.App. 180, 58 So. 735; Collins v. State, 111 Tex.Cr.R. 308, 12 S.W.2d 801. These are of little help in the instant case for here we are dealing, not with broad general principles but with the interpretation of definite words in a specific federal statute.

The sentence imposed upon accused is undoubtedly severe—perhaps too severe. Congress in enacting Section 2031 of the new Title 18 U.S.C.A. has indicated its conviction that a sentence of life imprison-

ment might be too harsh a penalty in at least some instances of rape. The District Judge, however, felt that he had no discretion to impose a lesser punishment under the law governing accused's sentence. Any mitigation of the sentence in line with the present views of Congress must now be sought at the hands of the Executive where such discretion is lodged.

The judgment of the District Court is affirmed.

Affirmed.