The appellant, Larry McGee, was tried for and convicted of the capital murder of a witness, in violation of §13A-5-40(a)(14), Code of Alabama 1975. He was sentenced to life in prison without parole.
At trial, the State's evidence tended to show the following facts: After the burglary of his service station, the victim, Henry Stevens, Jr., received information that the appellant was using a jack similar to one taken from his business. The victim approached the appellant, who was working on his car, and pulled a gun from his pocket. The victim attempted to question the appellant about the jack, but the appellant fled.
On February 13, 1988, the victim went to the Tuscaloosa Police Department to swear out a warrant for the appellant's arrest for receiving stolen property. After speaking with the victim, the warrant clerk, Milton Brown, called an investigator. While the victim was waiting for the investigator, the appellant came in seeking a warrant for the victim's arrest for pulling a gun on him. Brown told the appellant that the victim was there to obtain a warrant for his arrest and that he could not issue a "cross-warrant." The appellant left before the investigator arrived, but returned 30 minutes later. When the appellant returned, Brown told him that the victim was seeking a warrant for his arrest and that he needed to speak with Investigator Mike Rhodes.
Rhodes took statements from both the victim and the appellant and turned the statements over to Investigator Joe Patrick. After being advised of his rights pursuant to Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the appellant denied having any connection with the burglary, but conceded that the jack may be stolen. The appellant produced a receipt for the jack, which was handwritten on a piece of notebook paper.
On February 16, Investigator Patrick called the appellant and told him that he needed to speak with him, but he did not tell him that he was investigating the burglary or that he was seeking a warrant for his arrest.
On February 23, Gene Boswell, a district court magistrate, placed Patrick under oath and deposed him as to the facts underlying a warrant for the appellant's arrest for second degree receipt of stolen property. Patrick signed the warrant. The magistrate then placed the victim under oath. The victim swore to the truth and accuracy of the facts underlying the warrant and then signed the warrant. The warrant was picked up by Investigator Kuykendall and was left on Patrick's desk. That night, the appellant told Orlando Morse that he thought "someone had issued a warrant on him" and that he was "going to get him."
In the early evening of February 24, 1988, the appellant shot and killed the victim *Page 221 
with a .12 gauge shotgun, as he left his service station in a pickup truck.
 I
The appellant argues that the victim did not become a "witness" for the purpose of § 13A-5-40(a)(14) merely by swearing out a warrant for the appellant's arrest. Section13A-5-40(a)(14) provides that a murder is a capital murder
 "when the victim is subpoenaed, or has been subpoenaed, to testify, or the victim had testified, in any preliminary hearing, grand jury proceeding, criminal trial or criminal proceeding of whatever nature, or civil trial or civil proceeding of whatever nature, in any municipal, state, or federal court, when the murder stems from, is caused by, or is related to the capacity or role of the victim as a witness."
We find that the issue before us is whether by swearing out an arrest warrant, "the victim had testified, in any . . . criminal proceeding of whatever nature . . . in any . . . state . . . court."
In the case at bar, the victim "testified" when he was sworn by the magistrate and affirmed the truth and accuracy of the facts previously testified to by Investigator Patrick. The swearing out of a warrant is a criminal proceeding for the purposes of § 13A-5-40(a)(14) because witnesses are placed under oath and testify.[1] A district court in Alabama is unquestionably a "state" court. See Const. of Alabama 1901, Amend. No. 328, § 6.01. Thus, we find the appellant's issue to be without merit.
 II
The appellant further argues that the State failed to prove that he knew that the victim was a "witness" for the purpose of § 13A-5-40(a)(14). The appellant correctly argues that §13A-5-40(a)(14) requires that he must have had knowledge of the victim's status as a witness. See Ex parte Murry, 455 So.2d 72,73-74 (Ala. 1984).
Contrary to the appellant's claim that the State did not prove that he had the requisite knowledge, the record reflects that he knew on February 13 the victim was seeking a warrant for his arrest on February 13 and that, on the night before the murder, the appellant had told Morse that he thought someone had issued a warrant for his arrest and that he was "going to get him." The State sufficiently proved that the appellant knew of the victim's status as a witness and that the murder was "related to the capacity or role of the victim as a witness."
 III
The appellant argues that the trial court erred in overruling his motion made pursuant to Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He contends that the reasons given by the State for striking black venirepersons were insufficient to overcome his challenge. There were 11 blacks on the venire. The State struck five blacks, and the appellant struck two. Four blacks served on the jury, one of whom served as an alternate.
The State contended that venireperson no. 33 was "slow," "almost mentally retarded," and wavered in response to questions regarding the death penalty. The State contended that venireperson no. 56 was late to court, knew the victim, was "flighty" and "finicky," and wavered in response to questions regarding the death penalty. The State contended that venireperson no. 63 looked at the appellant and smiled at him; was hesitant in answering questions; appeared to know the appellant; knew T. P., a "longtime" defendant who had been visiting the appellant in jail; and had a juvenile record. The State contended that venireperson no. 40 was single and that the State struck other venirepersons who were single. The appellant does not challenge the strike of venireperson no. 69, who stated that she would refuse to impose the death penalty under any circumstances. *Page 222 See Smith v. State, 531 So.2d 1245 (Ala.Cr.App. 1987) (having reservations about the death penalty is a sufficiently race-neutral reason).
Regarding venireperson No. 33, the record does not support the contention that this venireperson was either "slow" or "almost mentally retarded." The record also does not reflect that this venireperson wavered in response to death penalty questions. However, there is evidence in the record that tends to support the State's perception of the venireperson's uncertainty:
 "[Prosecutor]: There is no reason why if the evidence and the law supports it, that you could not find for a guilty verdict and recommend — and I say recommend — the death sentence? Could you do that if you were convinced that he was guilty and that a death penalty should be imposed.
"[Venireperson]: No."
We find that the State's perception of the uncertainty of the venireperson in answering the question was sufficient for the trial court to conclude that the strike of venireperson no. 33 was race-neutral.
The record does not support the State's contention that venireperson no. 56 either wavered in response to questions regarding the death penalty or was "flighty" or "finicky." However, an acquaintance with the victim and being late to court have been held to be race-neutral reasons, see Robinsonv. State, 560 So.2d 1130 (Ala.Cr.App. 1989) (venireperson late for circuit court roll call twice is a sufficient race-neutral reason).
The demeanor and actions, such as smiling at the defendant, of venireperson no. 63 are sufficiently race-neutral reasons, especially in light of the facts that he had a juvenile record and that he knew T. P., who had been visiting the appellant in jail. See Harrell v. State, 555 So.2d 263, 268 n. 1 (Ala. 1989) (demeanor is a sufficiently race-neutral reason).
The marital status of venireperson no. 40, i.e., single, is a sufficiently race-neutral reason for the strike in light of the State's unrefuted assertion that other single persons on the venire were struck for this reason. See Thomas v. State,555 So.2d 320 (Ala.Cr.App. 1989).
When reviewing these reasons, this court has considered the following:
 "It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination. Ex parte Jackson, 516 So.2d 768 (Ala. 1986). Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal, Batson [v. Kentucky], 476 U.S. [79] 98, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 [(1986)], and should be reversed on appeal only if they are clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala. 1987)."
Ex parte Lynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied,493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989). We cannot say that the trial court's denial of the appellant's Batson
motion was clearly erroneous in this case.
 IV
The appellant argues that the trial court erred by denying his challenges for cause of venirepersons who favored the death penalty. However, " '[t]he holding in Witherspoon [v. Illinois,391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 . . . (1968)], is not applicable where the jury recommends a sentence less than the death sentence.' " Neelley v. State, 494 So.2d 669, 680
(Ala.Cr.App. 1985), aff'd, 494 So.2d 697 (Ala. 1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987) (citations omitted). The appellant was sentenced to life in prison without parole; therefore, Witherspoon is inapplicable.
 V
The appellant argues that the trial court erred by instructing the jury that a reasonable doubt, which would justify an acquittal, must be an "actual substantial doubt." The court charged the jury, in pertinent part, as follows: *Page 223 
 "If you determine that a reasonable doubt exists on the evidence or any part of it, your duty would be to acquit the defendant as to the particular charge or offense. The doubt which would justify an acquittal must be an actual substantial doubt, not just a possible doubt. A reasonable doubt cannot be a guess or surmise, it cannot be a capricious doubt. Before a conviction can be had in this case, the State must convince each of you beyond a reasonable doubt and to a moral certainty of every essential element of the crime charged. The State is not required to convince you of the defendant's guilt beyond all doubt, but simply beyond a reasonable doubt. The defendant here carries no burden of proof; he does not have to prove or disprove anything to you. The defendant comes into this court presumed innocent or cloaked with a presumption of innocence. That stays with him and attends him throughout the process of this trial. It stays with him until you go into the jury room; it is a piece of evidence."
The appellant contends that this instruction violates the principle enunciated in Cage v. Louisiana, ___ U.S. ___,111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
In Cage, the United States Supreme Court found that the use of the words "grave" and "substantial" in the expressions "grave uncertainty" and "actual substantial doubt" suggested a higher degree of doubt than is required for acquittal under the reasonable doubt standard. The Court further found that the use of such expressions in conjunction with the term "moral certainty" could lead a reasonable juror to interpret the instruction to allow a finding of guilt based on proof below that required by the Due Process Clause. Obviously, it was not the use of any one of these terms, but rather a combination of all three, that rendered the charge in Cage unconstitutional. See Gaskins v. McKellar, ___ U.S. ___, 111 S.Ct. 2277, 2277,114 L.Ed.2d 728 (1991) (where, in a memorandum opinion, Justice Stevens stated that he thought the Court correctly decided not to grant certiorari on the question of whether Cage announced a new rule because the jury instructions to be reviewed did not contain the specific language condemned in Cage, that a reasonable doubt "must be a doubt as would give rise to a grave uncertainty"). In the instant case, the trial court did use the phrases "actual substantial doubt" and "moral certainty" in its explanation of reasonable doubt; however, it did not use the words "grave uncertainty," which were used in Cage. Thus, this case is distinguishable from Cage. The use of some but not all of the phraseology condemned in Cage does not necessarily constitute reversible error. We have upheld reasonable doubt instructions that contain the expressions "actual and substantial doubt" and "moral certainty." See Adams v. State,562 So.2d 121 (Ala.Cr.App. 1991). See also Earhart v. State,593 So.2d 119 (Ala.Cr.App. 1991) (where the court approved a reasonable doubt charge containing "actual and substantial doubt");[2] Williams v. State, 539 So.2d 1053 (Ala.Cr.App. 1991) (where the court approved of a reasonable doubt charge containing "moral certainty" and "actual doubt").
In reviewing the reasonable doubt instruction in this case, we do so in the context of the charge as a whole. Baker v.United States, 412 F.2d 1069 (5th Cir. 1969), cert. denied,396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); Williams v.State, 538 So.2d 1250 (Ala.Cr.App. 1988). So long as the definition of reasonable doubt in the charge correctly conveys the concept of reasonable doubt, the charge will not be considered prejudicial enough to permit reversal. Holland v.United States, *Page 224 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Moss,756 F.2d 329 (4th Cir. 1985).
We have reviewed the reasonable doubt instructions in this case in the context in which they were given in the charge as a whole, and we do not find that these instructions contain the same flaw which was condemned by the Supreme Court inCage. Although the words "actual substantial doubt" and "moral certainty" were used in the instruction in the instant case, they do not, in our view, cause the same problem that the Court saw with the instruction in Cage. We think that the definition of reasonable doubt given the jury in this case correctly conveyed the concept of reasonable doubt and was not misleading or confusing. The trial court's instructions on the presumption of innocence, burden of proof, and the responsibilities of the jurors in weighing the evidence and using their common sense supports this conclusion. We find that the questioned instruction was proper and was not, as the appellant contends, constitutionally deficient.
For the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
TYSON, BOWEN and McMILLAN, JJ., concur.
TAYLOR, J., concurs in result only.
[1] After January 1, 1991, when an action is commenced will be determined according to A.R.Cr.P. 2.1, and the definition of "criminal proceeding" will be determined according to A.R.Cr.P. 1.4(h).
[2] In Earhart, 593 So.2d at 120, in noting that "it appears that the term 'grave uncertainty' is the key phrase which the Supreme Court found offensive," the court relied on what it considered to be a recent United States Supreme Court memorandum opinion, Gaskins v. McKellar, ___ U.S. ___,111 S.Ct. 2277, 114 L.Ed.2d 728 (1991). However, upon another examination of Gaskins, we note that the quoted opinion is that of Justice Stevens and is not to be attributed to a majority of the Court. Although this misconception lent weight to our holding in Earhart, we find that, even with the correct impression of the impact of Gaskins, we would still hold as we did in Earhart.