[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
Michael Christianson, the appellant, was convicted of attempted murder and robbery in the first degree and was sentenced to life without parole as an habitual felony offender. Through appointed counsel, he raises three issues on this appeal from those convictions. In a pro se brief, the appellant raises seven additional issues.
 I.
There was no violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record does not reflect the number of blacks who served on the jury. However, there were 12 blacks on the 27-member jury venire. The State used five of its seven strikes to remove the five black females from that venire. The defense struck six white males. There is no indication of how the defense used its seventh strike. Therefore, there must have been either six or seven blacks on the jury. The voir dire is not contained in the record. While blacks constituted 44% of the venire, they composed either 50% or 58% of the jury.
One black was struck because she "felt [she] ha[d] seen" the appellant, although she could not remember where. R. 26-27. The other four blacks were struck because they were either single, unemployed,[1] watched "soap operas,"[2] or a combination of these factors. The State struck white jurors with those same characteristics. There is no evidence of disparate treatment. The prosecutor did not strike anyone who owned a handgun,[3] and mentioned that he intentionally did not strike one black who was single based on that veniremember's ownership of a handgun. R. 38. The prosecutor stated: "The primary considerations are unemployed, single, plus for handgun [ownership], minus for soap opera. And the two specific people, the [white] lady who knew everybody and the [black] lady who knows the defendant's face." R. 41.
After the prosecutor stated his reasons, the trial judge found that "there appear to be commonalities among the white folks he struck and the black folks, based upon the reasons he just outlined. And as he said, you [defense counsel] reached some of the folks he might have struck. I am going to hold he did not strike any black juror for a racial reason. . . ." R. 41. *Page 515 
The prosecutor's reasons, at least facially, are extremely weak. In Ex parte Bird, 594 So.2d 676, 682-83 (Ala. 1991), the Alabama Supreme Court made the following observation:
 "[W]e realize that in certain cases age may serve as a legitimate racially neutral reason for a peremptory strike. . . . However, the age rationale is highly suspect because of its inherent susceptibility to abuse. . . . A mere summary declaration that age was a factor in the decision to strike is, therefore, constitutionally deficient and warrants reversal."[4]
We place "unemployment" and "single" in the same "highly suspect" category as "age."
However, in this case, there are other factors that defeat any showing of racial discrimination in the selection of the jury. There is no claim or evidence of disparate treatment, and there is evidence that the prosecutor struck every veniremember who was single, unemployed, or watched soap operas, regardless of race, unless there was a reason not to. Just as "disparate treatment furnishes strong evidence of discriminatory intent,"Ex parte Bird, 594 So.2d at 681, comparable treatment tends to rebut the existence of discriminatory intent. See McGahee v.State, 554 So.2d 454, 462 (Ala.Cr.App.), affirmed,554 So.2d 473 (Ala. 1989) (although State's explanation for striking black veniremember was "somewhat weak," it was found "sufficient because the State struck a white juror for the same reason"); Ward v. State, 539 So.2d 407, 408 (Ala.Cr.App. 1988) (wherein this court, citing Ex parte Branch, 526 So.2d 609
(Ala. 1987), observed that "action in which non-black jurors have been challenged for the same or similar characteristics as black jurors who are struck has been deemed to be indicative of neutrality and is evidence which tends to overcome the presumption of discrimination"); Mathews v. State,534 So.2d 1129, 1130 (Ala.Cr.App. 1988) (State's striking both black and white veniremembers who were young and single did not, under particular facts, constitute a Batson violation); Smith v.State, 531 So.2d 1245, 1248 (Ala.Cr.App. 1987) (no discriminatory intent evident from strikes of white females and black females "for . . . similar reasons"); Funches v. State,518 So.2d 781, 788 (Ala.Cr.App. 1987) (no racial animus found when State struck both blacks and whites who were unemployed);Shelton v. State, 521 So.2d 1035, 1037-38 (Ala.Cr.App. 1987) (same), cert. denied, 521 So.2d 1038 (Ala. 1988).
The State intentionally left one black on the jury who was single but who owned a handgun. The prosecutor's failure to exercise a challenge for that juror demonstrates that he was acting in conformity with his previously-explained "rating system" for jurors. If counsel states that he has a plan or strategy for striking jurors, then "the challenges exercised must be consistent with that strategy." Patton, TheDiscriminatory Use of Peremptory Challenges in CivilLitigation: Practice, Procedure, and Review, 19 Tex.Tech.L.Rev. 921, 973 (1988). Here, all of the State's peremptory strikes were consistent with the prosecutor's rating system. There is no evidence that this system was a " 'convenient talisman
transforming Batson's protection against racial discrimination in jury selection into an illusion and the Batson hearing into an empty ceremony.' " Ex parte Bird, 594 So.2d at 682, (quoting C.E.J. v. State, 788 S.W.2d 849, 857 (Tex.App. 1990).
In addition, either 50% or 58% of the jury members were black.
 "A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been *Page 516 
created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, . . . then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d 1270, 1271-72 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 786 (1991).
 "To be sure, the fact that a larger percentage of black veniremembers eventually is seated on a jury raises less suspicion than if a smaller representation is seated and affords less support for a prima facie case of discrimination. . . . In fact, a large representation might afford the defendant no support at all and could even weaken his prima facie case should he be able to establish one on other grounds."
Ex parte Bird, 594 So.2d at 680-81.
The appellant's claim of racial discrimination was basedonly on the number of black veniremembers removed by the State. Under the reasoning in Harrell and in Ex parte Bird, the appellant did not present a prima facie case of discrimination. However, the trial judge listened to the State's reasons for its strikes and did not overrule the Batson objection on the ground that no prima facie case had been made. In other cases, we have reviewed the sufficiency of the State's reasons when they are of record and the trial court's ruling is not based on the failure to establish a prima facie case. See, e.g., Jacksonv. State, 594 So.2d 1289 (Ala.Cr.App. 1991); Currin v.State, 535 So.2d 221 (Ala.Cr.App.), cert. denied, 535 So.2d 225
(Ala. 1988).
Thus, while the State's reasons here are subject to appellate scrutiny, the scrutiny is less exacting than it would be if the appellant had made a strong prima facie showing of discrimination. As the Alabama Supreme Court stated in Ex parteBird, "a 'weak prima facie case may be rebutted more readily than a strong one.' " 594 So.2d at 680 (quoting Gamble v.State, 257 Ga. 325, 357 S.E.2d 792, 795 (1987) (emphasis byBird court deleted)). "In fact a large representation [of blacks on the jury] might afford the defendant no support at all and could even weaken his prima facie case should he be able to establish one on other grounds." Ex parte Bird, 594 So.2d at 681.
Because the prosecutor used a neutral plan or rating system in striking this jury, because the plan took into account various factors that the prosecutor consistently applied without regard to race, and because at least six black jurors actually served on this jury, we conclude that no violation ofBatson was shown.
"We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated." Scales v. State, 539 So.2d 1074,1075 (Ala. 1988). It is evident that the trial judge here believed the prosecutor's explanations and found them to be free of racial motivation. This finding is not clearly erroneous and must be upheld.
 II
The appellant's two concurrent sentences to life imprisonment without the possibility of parole do not violate the Eighth Amendment's prohibition against cruel and unusual punishment. See Brooks v. State, 456 So.2d 1142, 1144 (Ala.Cr.App. 1984);Lidge v. State, 419 So.2d 610, 613-44 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala. 1982); Seritt v. Alabama,731 F.2d 728 (11th Cir.), cert. denied, 469 U.S. 1062, 105 S.Ct. 545,83 L.Ed.2d 433 (1984). See generally Harmelin v. Michigan, ___ U.S. ___, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).
The appellant admits that before sentencing he received notice of the three prior convictions upon which the State relied to enhance his sentence as an habitual offender. Pro Se Brief of Appellant at 2. That was the only notice to which he was *Page 517 
entitled. See Ex parte Glover, 508 So.2d 218 (Ala. 1987). There is no requirement that an accused be informed, prior to trial, that he will be sentenced pursuant to the Habitual Felony Offender Act in the event of a conviction. Hinton v. State,473 So.2d 1125, 1126 (Ala. 1985).
 III
The trial court correctly denied the appellant's motion for a continuance. See Ex parte Saranthus, 501 So.2d 1256, 1257
(Ala. 1986).
On the day set for trial, the appellant moved for a continuance to locate two defense witnesses and to obtain the victim's hospital records. In response to that motion, the trial judge issued instanter subpoenas for Titus Lucas and Teresa Williams and issued a court order directing University Hospital to send the medical records. Mr. Lucas was located and was made available for a telephone interview with the appellant's attorney. After talking with Lucas, the appellant's attorney told the trial court that he "ha[d] no need for [Lucas as a witness], based on what he told me about his knowledge, he has no firsthand knowledge about the case." R.22-23. Ms. Williams was located, served with a subpoena, and in fact testified as a defense witness. The appellant's attorney received the medical records and stated in open court that he had "had the opportunity to review them and go over them with [his] client" before trial. R.22.
The appellant argues that the continuance was wrongly denied because, after the trial, he located a third witness, Ms. Corenza Smith, whose existence he never mentioned to the court prior to trial, but whose affidavit contradicted certain portions of the victim's testimony. We reject the argument that the trial judge erred by denying a continuance to locate a missing witness whose existence was never brought to his attention and whose presence was never requested. "[T]he trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987).
The affidavit of Ms. Corenza Smith, attached to the appellant's motion for new trial, does not qualify as newly discovered evidence because the facts averred therein could have been discovered before the trial by the exercise of due diligence. See Ex parte Heaton, 542 So.2d 931, 933 (Ala. 1989).
 IV
The appellant lists numerous grounds upon which he claims that his trial counsel was ineffective. The record does not indicate that this issue was ever raised, argued, or ruled upon by the court below, despite the fact that trial counsel was relieved of his appointment and new (appellate) counsel was named in time to file a motion for new trial alleging the inadequacy of prior counsel.
 " ' "[T]he now settled rule [is] that claims of ineffective assistance of counsel may not be considered for the first time on direct appeal." ' Jackson v. State, 534 So.2d 689, 692 (Ala.Cr.App. 1988) (quoting United States v. Stitzer, 785 F.2d 1506, 1520 (11th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986).
 "This Court 'has authority to remand a case if it determines justice would require it, to the trial court for a determination to be made on the defendant's claim that he was inadequately represented at his trial.' Thompson v. State, 525 So.2d 820, 831 (Ala. 1985) (emphasis in original). Our review of the record fails to convince this Court that this is such a case."
Fortner v. State, 582 So.2d 581, 587 (Ala.Cr.App. 1990), cert. denied, 582 So.2d 587 (Ala. 1991). In this case, these allegations are more appropriately dealt with in a Rule 32 petition.[5]
 V
The appellant argues that his pretrial photographic identification by the victim *Page 518 
was so impermissibly suggestive that the victim's in-court identification of him should have been suppressed.
The victim testified that the appellant came to his apartment, held him at gunpoint, demanded money, robbed him of $20, and shot him twice. The victim stated that he had seen the appellant "in the neighborhood," prior to this incident, but he did not know the appellant's name. Based on the victim's description of his assailant, Birmingham police detective Kenneth Glass showed the victim three different sets of photographs on three different occasions. The first two sets did not contain the appellant's picture.
The victim did not recognize his attacker in either of the first two sets of photographs. Then, the victim told Detective Glass that he had learned on his own that his assailant
 "was called Mike and that he . . . h[u]ng around the laundromat at Cullom and 13th Avenue South; . . . that he was somewhere around thirty-nine years old, bright-skinned and walked with a limp." R. 182.
Using this additional information, Detective Glass obtained the appellant's name as a possible suspect from another officer who routinely patrolled the area encompassing the victim's neighborhood. Glass stated, without objection, that Detective Steve Corbin, "who was working burglary," gave him the appellant's name. R. 182. Detective Glass obtained a picture of the appellant and showed it, along with five other photographs of similar-looking suspects, to the victim. The detective asked the victim to see if he recognized anyone. Glass did not, by word or action, "encourage [the victim] to pick any particular picture," R. 175. The victim immediately chose the appellant's picture from the third set of photographs.
After a voir dire hearing on this issue, the trial judge concluded that the pretrial identification was not suggestive and, furthermore, that the victim's ability to identify the appellant was independent of the photographic array. We agree. The appellant's argument that the photo array tainted the victim's in-court identification appears to be based solely on the following exchange, which occurred on voir dire examination of the victim outside the presence of the jury:
 "Q. [by assistant district attorney:] . . . [I]s your identification of this man, as the person that was in your apartment that night —
"A. [by victim:] Yes, sir.
 "Q. — based on the fact that your knew him from the neighborhood or based on the fact that you had seen him in those pictures?
 "A. The fact that I had seen him in my apartment and on the pictures and in the neighborhood.
 "THE COURT: Let me ask him a question. What the lawyer is concerned about, and [the appellant] may be concerned about, is this: Your in-court identification that [the prosecutor] wants to offer, he wants the jury to hear you say that [the appellant] there is the one who shot me. Is he the one that shot you?
"THE WITNESS: Yes, sir.
 "THE COURT: Now, was the photo spread, did that somehow influence you to pick this man?
"THE WITNESS: Oh, yes, sir.
"THE COURT: Why do you say that?
 "THE WITNESS: Because it's the photo as the same person that —
"THE COURT: Same person?
"THE WITNESS: Yes, sir.
 "THE COURT: Did the officer suggest to you or say to you anything that caused you to pick this man's picture?
"THE WITNESS: No, sir.
 "THE COURT: Did you pick his picture because that in fact is in your opinion the man that shot you?
 "THE WITNESS: Yes, sir." R. 114-16 (emphasis added).
The above-emphasized portion of the victim's testimony (indicating that "the photo spread . . . somehow influence[d him] to pick" the appellant) does not constitute evidence of suggestiveness. Instead, it presents, as the trial judge found, "a question of semantics." R. 122. In answer to *Page 519 
the trial court's question, "If you hadn't ever seen the photograph[ic] lineup, what would your opinion be about who shot you," the victim stated that his assailant was the appellant. R. 122-23.
We do not have before us the photographs shown to the victim. The appellant does not claim that the pictures themselves, the manner in which they were displayed, or any other procedure used during the photographic lineup tainted the victim's pretrial identification. Under the circumstances, there is no basis for arguing that the identification procedure was suggestive.
Nevertheless, we hold that even if the array itself or the manner of its presentation had been unduly suggestive, the victim's in-court identification of the appellant was admissible because it was independently reliable under the test established in Neil v. Biggers, 409 U.S. 188, 199,93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and reaffirmed in Manson v.Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253,53 L.Ed.2d 140 (1977). The victim had a good opportunity to view the individual who robbed and shot him in his own apartment in daylight hours; he was clearly paying attention during the encounter; he gave the police a brief description of his attacker within minutes, supplemented by a more thorough description a few days later; and without hesitation, he picked the appellant's photograph from the only array in which it was included.
 VI
The appellant claims that the admission of Detective Glass's testimony that he obtained the appellant's name as a suspect in this case from another officer, "who was working burglary," R. 182, was error. There was no objection to this evidence and the error, if any, in its admission has not been preserved for review. Wilburn v. State, 545 So.2d 231, 234 (Ala.Cr.App. 1989); Harris v. State, 420 So.2d 812, 816 (Ala.Cr.App. 1982).
 VII
At trial, the appellant, who was represented by appointed counsel, participated in his own defense. He asked a question during voir dire of the jury, conducted supplemental cross-examination of two witnesses, and made a closing argument. On appeal, he claims that his participation may have prejudiced the jury against him. Therefore, he argues, the court should have informed him of the dangers and disadvantages of self-representation pursuant to Faretta v. California,422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
This issue was never raised below and is not preserved for appellate review. Furthermore, the inquiry mandated by Faretta was not required here.
While a defendant has a Sixth Amendment right to be represented by counsel or to represent himself, Faretta, he does not have the right, under either the federal or state constitutions, to hybrid representation, see McKaskle v.Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122
(1984); Holloway v. State, 43 Ala. App. 153, 155, 182 So.2d 906,908 (1965), cert. denied, 279 Ala. 688, 182 So.2d 910 (1966).
 "The constitutional rights to self-representation and representation by counsel are viewed as mutually exclusive, though the trial court may permit hybrid representation, in its discretion, as 'a matter of grace.' "
2 W. LaFave J. Israel, Criminal Procedure, § 11.5(f) at 51-52 (1984) (quoting State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770,74 L.Ed.2d 983 (1983)).
Professor LaFave observes that "[a]llowing hybrid representation without an appropriate Faretta inquiry can create constitutional difficulties." Id. at 19 n. 48 (1991 Pocket Part). Those difficulties are presented in a case where the representation is nominally hybrid, but the defendant clearly "pull[s] the lead oar," State v. Howard,668 S.W.2d 191, 195 (Mo.App. 1984), or where it is unclear whether the representation is hybrid, or pro se assisted by standby counsel, Parren v. State, 309 Md. 260, 523 A.2d 597 (1987). Neither situation was *Page 520 
present here. The record demonstrates both that counsel was in charge of the litigation with the appellant's consent, and that the appellant's role at trial was limited and supplementary to his attorney's participation.
 VIII
The victim's testimony, outlined in Part V supra, was alone sufficient to establish a prima facie case of robbery and attempted murder. See Williams v. State, 568 So.2d 354, 357-58
(Ala.Cr.App. 1990) (robbery); Barnes v. State, 571 So.2d 372,374-75 (Ala.Cr.App. 1990) (attempted murder).
 IX
The appellant complains that the trial judge coerced the jury into a verdict that he was guilty of first degree robbery when they might have decided, instead, that he was guilty of second degree robbery. He bases this argument on the following inquiry during the reading of the verdict:
 "THE COURT: Mr. Hurt [foreman], has the jury reached unanimous verdicts with respect to the attempted murder charge and the first degree robbery charge?
"MR. HURT: Yes, sir, we have.
 "THE COURT: If you would read the verdict, just start with the 'We the jury' and read the verdict out loud with reference to the attempted murder charge.
 "MR. HURT: 'We the jury find the defendant, Michael Christianson, guilty of attempted murder as charged in the indictment.'
"THE COURT: Now, to the robbery charge.
 "MR. HURT: 'We the jury find the defendant, Michael Christianson, guilty of robbery as charged in the indictment.'
 "THE COURT: That's first degree robbery; is that right, sir?
"MR. HURT: Yes." R. 323.
In addition to the fact that this argument is procedurally barred because it was not presented below, it has no merit. Before any inquiry or "clarification" by the trial judge, the verdict as announced by the foreman read "guilty of robberyas charged in the indictment." The appellant was indicted for robbery in the first degree, R. 35, and the jury was not even charged on robbery in the second degree.
 X
At trial there was no objection to the court's charge on reasonable doubt, and any error in the instruction has, therefore, not been preserved for review. See Rule 21.2, A.R.Crim.P.
Nevertheless, we have reviewed the portion of the charge defining reasonable doubt and we find it to be free from error. The mere inclusion of the term "moral certainty" could not have led the jury to believe that it was authorized to convict on a standard of proof less demanding than that required by the Due Process Clause, in violation of Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990). McGee v. State,594 So.2d 219, 223 (Ala.Cr.App. 1991).
The court's admonition to the jury that a reasonable doubt is not a "capricious . . . whimsical . . . or fanciful doubt," while subject to criticism, does not constitute error. SeeMartin v. State, 548 So.2d 488, 491 (Ala.Cr.App. 1988), affirmed, 548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970,110 S.Ct. 419, 107 L.Ed.2d 383 (1989); Baker v. State,477 So.2d 496, 502-03 (Ala.Cr.App. 1985), cert. denied, 475 U.S. 1029,106 S.Ct. 1231, 89 L.Ed.2d 340 (1986), overruled on other grounds, Ex parte Frazier, 562 So.2d 560, 569 (Ala. 1989);Williams v. State, 455 So.2d 210, 212 (Ala.Cr.App. 1984).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The prosecutor had a bias against unemployed veniremembers: "I have a preference against folks who are unemployed because it is my belief that folks who work, as jurors, need to be able to interact with one another in the normal give and take of things as best exemplified in the work place." R. 36-37.
[2] The prosecutor stated his reason for striking veniremembers who watched soap operas: "[Soap operas] always have the wrong person charged, Your Honor. Either the police are in cahoots or they picked up the wrong person and the police just don't know it. Prosecutor is a crook and everything is wrong. Leaves them hanging on the end of the seat every day." R. 38-39.
[3] The prosecutor stated his preference for handgun ownership: "Out of preference for people who have handguns, that is a plus, because they are concerned about their own safety and about crime." R. 39.
[4] This categorization of "age" as a suspect reason must be contrasted to the Alabama Supreme Court's earlier characterization of age as a "relevant" factor which "may suffice to defeat the defendant's prima facie case." Harrell v.State, 555 So.2d 263, 268, n. 1 (Ala. 1989). "To be sure, in certain cases, age may be a sufficient reason to defeat the prima facie case of discrimination." Ray Sumlin ConstructionCompany, Inc. v. Moore, 583 So.2d 1320, 1322 (Ala. 1991).
[5] In Ex parte Jackson, 598 So.2d 895 (Ala. 1992), the Alabama Supreme Court announced a new rule for raising claims of ineffective assistance of counsel when new counsel is appointed to represent the appellant on appeal. *Page 521