MONTIEL, Judge.
The appellant was charged with the unlawful sale of cocaine. A jury found the appellant guilty as charged. The trial judge sentenced the appellant to life imprisonment pursuant to the Habitual Felony Offender Act.
On May 24, 1989, Carl Michael James, a deputy in the narcotics unit with the De-Kalb County Sheriff’s Department, while working undercover, was introduced to the appellant by a confidential informant. Deputy James testified that the appellant told him that he could find a supplier of cocaine. The appellant, Deputy James, and the informant got into James’s car, and the appellant directed Deputy James to a location on Tennessee Avenue in Gadsden, Alabama, where, the appellant informed James, he could obtain one-half gram of cocaine for $50. James further testified that he gave the appellant three $20 bills.
Once they arrived at the location to purchase the drug, the appellant instructed James to circle the block while he went in to make the purchase. Deputy James stated that he did as he was instructed. The appellant returned to the car with a white substance. Deputy James turned the substance over to Vance Patton of the Etowah County Narcotics Task Force. It was tested by the Alabama Department of Forensic Sciences and determined to be cocaine.
The appellant denied that he ever took money from Deputy James and denied that he ever purchased cocaine for James. The appellant contends the informant purchased the cocaine. The appellant testified that Deputy James gave him a portion of the cocaine and that he then went back to his house and “got high.”
I
The appellant contends that the trial court erred in denying his motion for con *507 tinuance so that he might obtain the appearance of certain witnesses. On the day of his trial, the appellant informed the court of the witnesses he would like available for his defense. The following occurred in chambers:
“MR. KING [defense counsel]: ... Today, for the first time, my client indicates he wants some other witnesses available and you need to state to the Court who those people are.
“THE DEFENDANT: Cynthia Harris, Willodean Harris, Willie Hester and Larry Teague.
“THE COURT: Have you conferred with him about this case beforehand?
“MR. KING: Yes, sir, but this is the first time I’ve heard of these witnesses he would like to have available.
“THE COURT: Well, we simply cannot allow such to affect the continuance where a person has known their trial was coming and then on the day of trial seeks a continuance based on witnesses of which the Court had no knowledge, for which no subpoenas have been issued.
“MR. KING: Of course, we would except to that ruling.
“THE COURT: All right. Are y’all ready?” (R. 5.)
There was no abuse of discretion in the denial of a request for a continuance based on the absence of these witnesses. In Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986), the Alabama Supreme Court set out the following test for determining whether a continuance should be granted on the ground that a witness is absent:
“If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).”
Here, the appellant never informed the court of these witnesses until the day of his trial. Neither the appellant nor defense counsel ever explained to the court what the expected testimony of these witnesses would be. Further, there was no showing that these witnesses would testify if a continuance was granted. Therefore, there was no abuse in discretion in denying the motion for continuance.
II
The appellant next contends that he was not afforded effective assistance of counsel at the trial of his case. Specifically, the appellant contends that his counsel was ineffective because, he says, just prior to trial, counsel sought to withdraw from the case. However, the record reveals that counsel asked to withdraw from the case at the appellant’s request. The trial court denied the request during a hearing on the motion for continuance, suggesting that this was a delay tactic on the part of the appellant. The appellant was appointed new counsel before a motion for new trial was filed.
After trial, the appellant filed a motion for a new trial on his own behalf, and the trial judge held a hearing on his motion, at which was present his newly appointed counsel. Specifically, the appellant argued that his original trial counsel did not interview certain witnesses: Larry Teague, Cynthia Harris, Diane McClusky, Mike Morrison, and Anthony Harvey.
Two of the witnesses, Larry Teague and Cynthia Harris, were both incarcerated at the time of the appellant’s trial. Teague at Draper Correctional Facility and Harris at Julia Tutwiler. Because these witnesses were unavailable, the court allowed the appellant to testify as to what their testimony would have been had they testified.
During the hearing, Diane McClusky testified that she sent the appellant to the grocery store and that he came back with a man and a woman. She said that she did not know anything about the drug sale, and had she been called to testify, she could not have said anything about what had happened. Also during the hearing, Anthony Harvey stated that, after talking *508 to his own attorney, he did not want to testify, and if put under oath, he would exercise his right against self-incrimination.
During the hearings, the appellant admitted that the informer, Mike Morrison, was subpoenaed by defense counsel at trial and that he sat in the hall until the case was over. As a matter of trial strategy, defense counsel simply chose not to call him to testify. At the close of all the testimony, he denied the appellant’s motion for a new trial. We find no abuse in the denial of the motion. The appellant failed to show that, had these witnesses testified, the result of his trial would have been different. Therefore, the appellant has not shown that his trial counsel’s performance was deficient under Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Ill
The appellant contends that the trial court erred in allowing the prosecution to impeach him regarding his present incarceration at the Limestone Correctional Facility at the time of his trial. Specifically, he argues that this impeachment was tantamount to bringing him before the jury in handcuffs and shackles.
“The general rule in this county is that a party may cross-examine a witness as to his place of residence.” C. Gamble, McElroy’s Alabama Evidence § 136.02(1) (4th ed. 1991). See also Locke v. State, 527 So.2d 1343 (Ala.Cr.App.1987), aff'd, Ex parte Locke, 527 So.2d 1347, cert. denied, 488 U.S. 912, 109 S.Ct. 270, 102 L.Ed.2d 257 (1988); Adams v. State, 19 Ala.App. 316, 97 So. 159 (1923), and cases cited therein.
The following occurred during the direct examination of the appellant:
“Q [Defense counsel]: State your name for the Court and jury, please, sir.
“A Winston Benson.
“Q Okay. And what is your residence address, please sir?
“A 504 Henry Street, Gadsden, Alabama.
“Q Is that in West Gadsden?
“A That’s in North Gadsden.”
Then during cross-examination, the following occurred:
“Q [Prosecutor]: Uh-huh. Now, let’s go back to the first thing. I think the second question Mr. King asked you is where you lived. Now, you said you lived on, what, Henry Street?
“A 504 Henry Street.
“Q Now, tell the people of this jury where you really live right now, Winston. What’s your mailing address right now?
“A Right now?
“Q Right now.
“A Right now?
“MR. KING: Judge, I object to this line of questioning. Doesn’t have anything to do—
“MR. HEDGSPETH: Purpose of impeachment.
“MR. KING: —with this case.
“THE COURT: Overruled.
“Q You can answer, Winston. What’s your mailing address—
“MR. KING: Before he goes into that, he’s opening the door, also. I want to remind the Court — and if he opens the door, I can go into the probation, that he’s on probation.
“MR. HEDGSPETH: He’s already said he was on parole, Judge.
“THE COURT: All right. Overruled. Answer the question.
“Q What’s your mailing address?
“MR. KING: Okay.
“THE WITNESS: My mailing address is P.O. Box 66, Capshaw, Alabama.
“Q Capshaw, Alabama. And where do you live in Capshaw, Alabama, right now, Winston?
“A Right now I am incarcerated at Limestone Correctional Facility.
“Q Limestone Correctional Facility. So, when Mr. King asked you a while ago about where you lived, you actually live in Limestone County and not in Etowah County?
“A He was referring to the time of May 24—
“Q That’s a yes or not question. You can answer it yes or no.
*509 “MR. KING: Judge, he can answer it fully, if he has to.
“MR. HEDGSPETH: His client doesn’t need any help from his lawyer to answer yes or no, Your Honor.
“MR. KING: Again, Judge, he can answer it fully if he needs—
“Q Just answer my question.
“THE COURT: He can answer that question yes or no.
“Q You can answer it yes or no. You live in Limestone County, not Etowah County, don’t you?
“A Yes, sir, right now.
“Q So, when you told Mr. King you lived in Etowah County right now, that wasn’t quite correct, was it?
“A He was referring to May 24—
“Q Yes or no, that was not correct, was it?” (R. 89-91.)
Here, the questions concerning the appellant’s incarceration were designed for impeachment purposes after the appellant stated on direct examination that he resided in Gadsden, Alabama. A California court in a case similar to this one held that the scope of direct examination determines the proper limits of cross-examination, and that cross-examination is allowable so long as it is limited to the subject matter of direct examination.
The California court, in People v. Zammora, 66 Cal.App.2d 166, 152 P.2d 180 (1944), although reversing on other grounds, ruled that where a defendant had testified during direct examination that he had worked on his father’s ranch during the eight or nine months prior to the crimes charged, the prosecutor was properly allowed to cross-examine the defendant as to whether he had lived continuously on the ranch during the nine months in question. In answering this question, the defendant revealed that, during a portion of the eight or nine months, he had been confined in the county jail and on an honor farm.
The court declared that while a defendant cannot be compelled to testify, if he elects to do so on his own behalf, he may then be cross-examined as to all matters about which he was examined in chief.
Furthermore, cross-examination of a witness is a matter of right. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). One purpose of cross-examination is to bring out facts that discredit the witness by showing that his direct testimony was untrue or biased. Tla-Koo-Yel-Lee v. United States, 167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166 (1897).
A defendant cannot be compelled to testify. However, if he elects to do so on his own behalf, he may then be cross-examined as to all matters about which he was examined on direct examination. Because the appellant testified falsely to his place of residence on direct examination, the court was correct in allowing cross-examination as to this matter.
IV
Next, the appellant contends that he was denied the effective assistance of counsel because his attorney failed to object to the trial judge’s charge on reasonable doubt. He raises this issue in his motion for a new trial. Therefore, it is properly before this court. Ex parte Jackson, 598 So.2d 895 (Ala.1992).
Here, the trial court’s instruction on reasonable doubt was not erroneous because it did not include the words “grave uncertainty” and, thus, his counsel was not ineffective for not objecting to this instruction. McGhee v. State, 594 So.2d 219 (Ala.Crim.App.1991).
For the above reasons, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.